

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 6985 | **DATE** | 3/1/2004 |
| **CASE TITLE** | FTC vs. World Media Brokers | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The FTC's motion for partial summary judgment (R.29-1) is granted. Defendant Temple's motion to strike Plaintiff's exhibits (R. 43-1) is denied as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAR 02 2004 | |
| | Notified counsel by telephone. | | date docketed | 51 |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | | |
| | Copy to judge/magistrate judge. | | | |
| TH | courtroom deputy's initials | 04 FEB 29 PM 10:42 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 02 C 6985 |
| v. ) | |
| ) | |
| WORLD MEDIA BROKERS INC., a/k/a ) | |
| 913062 ONTARIO INC., et al., ) | |
| ) | |
| Defendants. ) | |

DOCKETED
MAR 2 2004

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

The United States Federal Trade Commission ("FTC") filed a six count complaint against World Media Brokers, Inc. ("WMB") and other corporations[1] (collectively, the "Corporate Defendants"), and George Yemec and Anita Rapp (collectively, the "Individual Defendants"), alleging violations of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the FTC's Telemarketing Sales Rule, 16 C.F.R. Part 310. Specifically, the FTC alleges that Defendants illegally sold Canadian lottery tickets to consumers throughout the United States and misrepresented to those consumers that such sales were legal.

In Count I, the FTC alleges that Defendants' representations that the consumer is likely to win a large prize in the Canadian lottery constitute a deceptive practice, in violation of Section 5

---

[1] The Corporate Defendants include: World Media Brokers, Inc., a/k/a 913062 Ontario Inc.; 624654 Ontario Ltd., d/b/a Express Sales, Express Marketing Services, EMS, and First TeleGroup Marketing; 637736 Ontario Ltd., a/k/a Sam's Lottery Agency, Ltd., d/b/a Express Marketing Services and EMS; 537721 Ontario Inc., d/b/a Canadian Express Club; and Express Marketing Services Ltd., d/b/a EMS. (R. 30-1, ¶¶ 5-9; R. 1-1, ¶¶ 5-11.) Defendants use these corporations interchangeably, making it impossible to distinguish one's actions from another.

of the FTC Act. In Count II, the FTC alleges that Defendants' failure to disclose to United States' consumers that selling and trafficking in foreign lottery tickets is a violation of federal criminal law constitutes a deceptive practice, in violation of Section 5 of the FTC Act. In Count III, the FTC alleges that Defendants' representations to United States' consumers that Defendants can legally sell foreign lottery tickets to United States' consumers and that the United States' consumers can legally purchase such tickets constitute deceptive acts or practices, in violation of Section 5 of the FTC Act. In Count IV, the FTC alleges that Defendants' representations that the consumer would receive a substantial monetary award or other prize in the Canadian lottery constitute a deceptive practice, in violation of Section 5 of the FTC Act. In Count V, the FTC alleges that Defendants' failure to disclose that the sale and trafficking of foreign lottery tickets is a crime in the United States constitutes a violation of Section 310.3(a)(1)(ii) of the Telemarketing Sales Rule. In Count VI, the FTC alleges that Defendants made certain false and misleading statements to induce United States' consumers to purchase foreign lottery tickets or interests, in violation of Section 310.3(a)(4) of the Telemarketing Sales Rule.

The FTC moved for partial summary judgment on Counts II, III, V, and VI. For the reasons stated herein, the FTC's motion for summary judgment is granted as to those counts.

## LEGAL STANDARDS

### I. Summary Judgment

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of triable fact exists only if "the evidence

2

is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552 (1986). A party will successfully oppose summary judgment only if it presents "definite, competent evidence to rebut the motion." *Equal Employment Opportunity Comm'n v. Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). The Court "considers the evidentiary record in the light most favorable to the nonmoving party, and draws all reasonable inferences in his favor." *Lesch v. Crown Cork & Seal Co.*, 282 F .3d 467, 471 (7th Cir. 2002).

## II. Local Rule 56.1

The Court first addresses Defendants' failure to comply with the requirements of Local Rule 56.1, which governs summary judgment briefing in the Northern District of Illinois. L.R. 56.1. Local Rule 56.1(a)(3) requires the moving party to provide a "statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." L.R. 56.1(a)(3). The opposing party must then file "a concise response to the movant's statement," in which the nonmoving party must "admit or deny each factual statement proffered by the defendant . . . , and designate with specificity and particularity those material facts believed to establish a genuine dispute for trial." *Greer v. Board of Educ. of the City of Chicago*, 267 F.3d 723, 727 (7th Cir. 2001); L.R. 56.1(b)(3)(A). The nonmoving party

may also file a statement of additional facts that require the denial of summary judgment. L.R. 56.1(b)(3)(B). The moving party must submit a reply addressing each additional fact. "All material facts set forth in the statement filed pursuant to section (b)(3)(B) will be deemed admitted unless controverted by the [reply] statement of the moving party." *Dimmitt & Owens Fin., Inc. v. Superior Sports Prods., Inc.*, 196 F. Supp. 2d 731, 737 (N.D. Ill. 2002).

Defendants' Rule 56.1 response is inadequate. Many statements in Defendants' response include impermissible argument, conclusory statements, and duplicative responses to separate paragraphs. Instead of simply admitting or denying the FTC's asserted facts, Defendants improperly assert legal arguments regarding whether the FTC should have relied on George Yemec's affidavit and whether certain alleged activity was in fact legal. Moreover, Defendants repeatedly limit their responses to the Individual Defendants without referring to the Corporate Defendants, thereby implicitly admitting that the Corporate Defendants engaged in the alleged activity. Local Rule 56.1 statements that are full of argument, evasion, and improper denials defeat the point of Local Rule 56.1, which is to identify precisely which facts are actually in dispute. *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 528 (7th Cir. 2000). Defendants' failure to adequately dispute the FTC's material facts, however, does not result in an automatic grant of summary judgment in the FTC's favor. The Court still must evaluate all facts in the light most favorable to Defendants, the nonmoving party. *O'Donnell v. City of Chicago*, No. 02 C 1847, 2003 WL 22339285, at *1 (N.D. Ill. Oct. 14, 2003).[2]

---

[2] Although the FTC technically failed to comply with Local Rule 56.1, its error does not preclude summary judgment. The FTC responded to only a fraction of Defendants' Rule 56.1(b)(3)(B) statement of additional facts because, the FTC argued, it was only required to address the additional facts that Defendants actually cited in their opposition to summary judgment. The facts that the FTC failed to address are deemed admitted. These admitted facts,

4

## BACKGROUND

### I. Defendants' Attack On The FTC's Evidence

Defendants, in their responses to the FTC's statement of material facts, assert numerous legal arguments attacking the authenticity and admissibility of the evidence on which the FTC bases its statement of material facts. The Court will address those arguments—none of which have merit—before reciting the undisputed facts.

First, Defendants argue that the FTC improperly obtained the sworn affidavit of Individual Defendant George Yemec and that the Court, therefore, should not consider Yemec's affidavit. Yemec submitted his sworn affidavit in a Canadian proceeding wherein the FTC obtained an injunction against Defendants that was later dissolved by the Ontario Superior Court of Justice. Defendants do not argue that the Yemec affidavit is irrelevant or untrustworthy. Instead, Defendants argue that they never consented to the FTC's use of the affidavit in this proceeding, and that Justice Gans of the Ontario Superior Court "essentially" required the FTC "to return all documents and equipment immediately and to release Defendants' assets." (R. 43-1, Defs.' Mot. to Strike Pl.'s Exs. at 2.) These arguments are misguided because Defendants' consent is not necessary,[3] and because Defendants mischaracterize Justice Gans's ruling. Justice

---

however, are insufficient to defeat summary judgment because they contain legal conclusions and statements that are generally irrelevant to the basis of the FTC's motion for partial summary judgment. (*See* R.38-2, Defs.' Response to Pl.'s Statement of Material Facts and Add'l Facts ("Defs.' Rule 56.1 Response") ¶¶ 75-106, 111, 113, 117-132.)

[3] In any event, Defendants did give their consent to the FTC to use the Canadian documents. In an October 15, 2003 letter, the FTC's counsel David A. O'Toole reminded Defendants' counsel James M. Lancheros that Mr. Lancheros called Mr. O'Toole on July 22 and "agree[d] that I could have access to the documents your clients had filed." (R. 42, Pl.'s Ex. No. 52, Attachment M.) Defendants never disputed this version of events.

Gans never prohibited the FTC from using the documents from the Canadian proceeding in this proceeding. In fact, Justice Gans specifically contemplated a ruling from this Court that Defendants cannot restrict the FTC's use of Defendants' documents from the Canadian proceeding. (R. 39-1, FTC's Reply Mem. for Partial Summ. J. ("FTC's Reply Mem.") at 8) ("This Court orders that all the properties, assets, evidence, and documents of the Defendants . . . shall be returned to the Defendants forthwith and any copies . . . shall be returned subject to any order of the United States District Court, Northern District of Illinois or this Honourable Court." *FTC v. Yemec, et al.*, Docket No. 02-CV-237070CM3, at 3 (Ontario Sup. Ct. of Justice Oct. 21, 2003).) The FTC properly relied upon Yemec's sworn affidavit.

Second, Defendants attack the reliability and authenticity of the FTC's evidence contained in the declaration of the FTC's investigator, Alan Krause. (R. 38-1, Defs.' Mem. in Opp. to the FTC's Mot. for Partial Summ. J. ("Defs.' Opp. Mem.") at 10.) This attack has no merit. Defendants filed a motion pursuant to Federal Rule of Civil Procedure 56(f) for an extension of time to allow for needed discovery concerning the quality and authenticity of the FTC's investigation, which was conducted by Mr. Krause. (R. 33-1, Defs.' Rule 56(f) Mot. for Extension of Time.) The Court granted the motion and gave Defendants an additional three weeks to file their response brief, expressly to allow them to depose Mr. Krause. (*See* Minute Order, Sept. 17, 2003.) Defendants, however, made no attempt to schedule Mr. Krause's deposition. (*See* R. 39-1, FTC's Reply Mem. at 8.) Mr. Krause swore to the truth of his declaration and the authenticity of the exhibits attached to his declaration. Defendants had the opportunity to depose Mr. Krause to support their speculation that Mr. Krause's declaration and exhibits are "incorrect" and "unreliable," but they chose not to do so.

Defendants also attack certain "inaccurate conclusions" that Mr. Krause allegedly made in his declaration (R. 38-1, Defs.' Opp. Mem. at 11-12), but those alleged conclusions do not relate to the counts addressed in the FTC's motion for partial summary judgment.

Defendants complain that the FTC relies on evidence that Defendants "cannot review or dispute" and "cannot investigate." (R. 38-1, Defs.' Opp. Mem. at 13.) Defendants refer to specific exhibits and tape recordings referenced in Mr. Krause's declaration. Defendants, however, have had more than one year to request and listen to the tape recordings cited by the FTC as evidence of certain material facts. The FTC made more than six boxes of supporting documents available to Defendants when the FTC responded to Defendants' document requests in July 2003. (R. 39-1, FTC's Reply Mem. at 9.) Defendants cannot now complain that they chose not to review those documents.

Finally, the Court notes that Defendants have already made binding admissions as to most of the material facts contained in the FTC's Rule 56.1 statement because they have failed to respond to the FTC's Requests for Admission. After failing to timely respond to the FTC's Requests for Admission, Defendants filed a motion to withdraw their admissions. (R. 35-1, Defs.' Mot. to Withdraw Admissions Under Rule 36(b).) The FTC did not oppose the motion, and the Court granted Defendants until September 23, 2003 to respond. Defendants never filed a response. Accordingly, Defendants' failure to respond to the FTC's Requests for Admission results in binding admissions of most of the statements in the FTC's statement of material facts.[4] *See* Fed. R. Civ. P. 36(a); *see also United States v. Kasuboski*, 834 F.2d 1345, 1350 (7th Cir.

---

[4] The following paragraphs are deemed admitted by Defendants' failure to respond to the FTC's Requests for Admission: ¶¶ 2-4, 21-26, 29-33, and 36-40. (*See* R. 41-1, FTC's Rule 56.1 Reply at 4-5.)

7

1987) ("Admissions made under Rule 36, even default admissions, can serve as the factual predicate for summary judgment."); *FTC v. Consumer Alliance, Inc.*, No. 02 C 2429, 2003 WL 22287364, at *3 (N.D. Ill. Sept. 30 2003).

## II. The Corporate Defendants' Activities Relating To Their Foreign Lottery Ticket Purchasing Business

The Corporate Defendants[5] sell foreign lottery tickets and interests in foreign lottery tickets to consumers throughout the United States. (R. 30-1, Pl.'s Statement of Material Facts ("FTC's Rule 56.1 Statement") ¶ 12.) As part of that business, the Corporate Defendants contact consumers throughout the United States in an attempt to sell foreign lottery tickets or interests in foreign lottery tickets, and mail foreign lottery materials to United States' consumers. (*Id.* ¶¶ 4, 12.) The Corporate Defendants typically offer consumers packages of chances in the Canadian lottery, including a combination of individual chances and "group" chances. (*Id.* ¶¶ 20, 32.) In these group plays, the consumer buys a share in a group purchase of lottery tickets and the winnings are shared among the other members of the group. (*Id.* ¶ 33.) Packages usually sell for between approximately $100 and $500. (*Id.* ¶ 34.) Over the past twenty years, the Corporate Defendants have employed at least 7,000 individuals in their businesses, and in September 2002—when the FTC filed the complaint in this case—they employed at least eighty individuals. (*Id.* ¶¶ 29-30.)

---

[5] As noted, Defendants repeatedly deny in their Rule 56.1 response that the Individual Defendants engaged in the activity alleged in the FTC's Rule 56.1 statement, but fail to admit or deny whether the *Corporate* Defendants engaged in the alleged activity. Defendants' failure to admit or deny the allegations with respect to the Corporate Defendants is an admission that the Corporate Defendants engaged in the alleged activity.

## III. The Corporate Defendants' Representations

The Corporate Defendants' telemarketers call United States' consumers and represent to them that they are offering group tickets in the Canadian lottery and that they will provide consumers with their own individual tickets in the Canadian lottery. (R. 30-1, FTC's Rule 56.1 Statement ¶¶ 11, 20, 21.) During telephone solicitations, the Corporate Defendants' representatives do not disclose that it is illegal for them to sell foreign lottery ticket packages to United States' consumers, nor do they disclose that it is illegal for United States' consumers to purchase foreign lottery tickets from the Corporate Defendants. (*Id.* ¶¶ 36-37.) The Corporate Defendants trained their telemarketers to respond to consumers who questioned the legality of playing the Canadian lottery by denying that it is illegal and assuring them that the law merely forbids sending tickets—and not other materials—through the mail. (*Id.* ¶ 45.) The Corporate Defendants' telemarketers tell United States' consumers that the Corporate Defendants are affiliated with, or registered by, the Canadian government, that they are authorized by the Canadian government, and that they "specialize" in providing United States residents the opportunity to play the Canadian lottery. (*Id.* ¶¶ 39-40.) Several consumers would not have purchased the Corporate Defendants' products or services if the consumers had known that the proposed transactions might be illegal. (*Id.* ¶ 46.)

Several government agencies and even some consumers have alerted the Corporate Defendants that their activities may run afoul of federal law. In 1995, the Department of Justice informed the Corporate Defendants that the sale of foreign lottery tickets or pools is a criminal offense in the United States. (*Id.* ¶ 44.) In 1989, the United States Postal Service issued a cease and desist order against several of the defendants in this case, including Individual Defendants

9

George Yemec and Anita Rapp, forbidding them from using the United States mails to send material "of any kind relating to any lottery." (R. 29-1, FTC's Summ. J. Mem. at 6 n.6.) Moreover, several consumers have informed Defendants that they believed that it was illegal for Defendants to sell foreign lottery interests to United States residents. (R. 30-1, FTC's Rule 56.1 Statement ¶ 41.)

## IV. The Individual Defendants

George Yemec incorporated Corporate Defendant WMB and serves as its first and only director, president, and secretary. (R. 30-1, FTC's Rule 56.1 Statement ¶¶ 48-49; R. 38-2, Defs.' Rule 56.1 Response ¶¶ 48-49.) Yemec also served as a corporate officer for Corporate Defendants 624654 Ontario Ltd., 637736 Ontario Ltd., and 537721 Ontario Inc. (*Id.* ¶¶ 52-57.) Although he did not have sole control over the Corporate Defendants, Yemec was responsible for customer service and for approving the telemarketing scripts for the Corporate Defendants, and he managed the Corporate Defendants' telemarketing and promotions. (*Id.* ¶¶ 59-60, 62.) Yemec never personally made phone calls or mailed lottery materials to United States' consumers. (R. 38-2, Defs.' Rule 56.1 Response ¶¶ 76-77.)

Anita Rapp is also an owner, director, and officer of various Corporate Defendants. (*Id.* ¶¶ 63, 66, 71.) Although she did not have sole control over managing the Corporate Defendants' business affairs, Rapp managed the Corporate Defendants' telemarketing operations and day-to-day financial and administrative affairs, and she arranged for offshore credit card processing for the Corporate Defendants' enterprises. (*Id.* ¶¶ 64-65, 67-68, 70.) Rapp never personally made phone calls or mailed lottery materials to United States' consumers. (R. 38-2, Defs.' Rule 56.1 Response ¶¶ 76-77.)

10

## V. Procedural Background

The FTC filed the complaint in this Court on September 30, 2002, seeking a preliminary and permanent injunction, an asset freeze, rescission, restitution or reformation, and other equitable relief available under 15 U.S.C. § 57b(b). This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. § 57b(a)(1).

On November 26, 2002, the Court entered a stipulated order for preliminary injunction as to the Individual Defendants and the Corporate Defendants. (R. 16-1, Stip. Order for Prelim. Inj. as to George Yemec, Anita Rapp and the Canadian Corporate Defs., and Order for Prelim. Inj. with Asset Freeze and Other Relief as to Defs. 1165107 Ontario and Faby Games.)

## ANALYSIS

The FTC claims that Defendants violated Section 5 of the FTC Act and the Telemarketing Sales Rule by making material misrepresentations to United States' consumers regarding the legality of Defendants' lottery services. Specifically, the FTC argues that Defendants told consumers that selling and trafficking in foreign lottery tickets in the United States is legal.[6] These representations are deceptive because selling and trafficking in foreign lottery tickets is not—as Defendants represent—legal, but is prohibited by federal law.[7]

---

[6] The FTC also argues that Defendants made material misrepresentations by omission, by failing to disclose to United States' consumers that selling and trafficking in foreign lottery tickets in the United States violates federal criminal laws.

[7] The FTC contends that such activity is prohibited by at least the following federal criminal statutes: 18 U.S.C. §§ 1301, 1302, 1952, 1953, and 1084.

11

I.  **The Relevant Statutes**

   A.  **The FTC Act**

The FTC Act makes it unlawful to engage in unfair or deceptive commercial practices. Section 5 of the FTC Act prohibits "unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a)(1). "[T]o establish that an act or practice is deceptive, the FTC must establish that the representations, omissions, or practices likely would mislead consumers, acting reasonably, to their detriment." *FTC v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020, 1029 (7th Cir. 1988). Misrepresentations of material facts made for the purpose of inducing consumers to purchase goods or services also constitute unfair or deceptive acts or practices that are forbidden by Section 5(a). *Id.* at 1029. A statement or practice is material if it is likely to affect the consumer's decision to buy the product or service. *See id.*

Section 57b of the FTC Act provides that "[i]f any person, partnership, or corporation violates any rule under this subchapter respecting unfair or deceptive acts or practices . . . then the Commission may commence a civil action against such person, partnership, or corporation for relief under subsection (b) of this section in a United States district court or in any court of competent jurisdiction of a State." 15 U.S.C. § 57b(a)(1). Section 13(b) of the FTC Act provides "[t]hat in proper cases the Commission may seek and after proper proof, the court may issue, a permanent injunction." 15 U.S.C. § 53(b). Section 13(b) is often used by the FTC to pursue violations of Section 5 of the FTC Act. *FTC v. Amy Travel Servs., Inc.*, 875 F.2d 564, 571 (7th Cir. 1989).

### B. The Telemarketing Sales Rule

The Telemarketing Sales Rule, 16 C.F.R. § 310.3(a)(4), "prohibits sellers and telemarketers from making false or misleading statements to induce persons to acquire goods or services." *FTC v. Growth Plus Int'l Mktg., Inc.*, No. 00 C 7886, 2001 WL 128139, at *3 (N.D. Ill. Jan. 9, 2001). Section 310.3(a)(1)(ii) of the Telemarketing Sales Rule prohibits sellers and telemarketers "[b]efore a customer pays for goods or services offered, [from] failing to disclose, in a clear and conspicuous manner . . . [a]ll material restrictions, limitations, or conditions to purchase, receive, or use the goods or services that are the subject of the sales offer." 16 C.F.R. § 310.3(a)(1)(ii). Section 310.3(a)(4) further prohibits telemarketers and sellers from "[m]aking a false or misleading statement to induce any person to pay for goods or services." 16 C.F.R. § 310.3(a)(4). It is undisputed that the Corporate Defendants are "sellers" and "telemarketers" engaged in "telemarketing" as those terms are defined in the Telemarketing Sales Rule. 16 C.F.R. §§ 310.2(r), (t), and (u). The FTC may enforce violations of the Telemarketing Sales Rule as though they were violations of Section 5 of the FTC Act. 15 U.S.C. § 6105(b).

### II. The FTC Has Shown That The Corporate Defendants' Representations Regarding The Legality Of Their Activities Are Deceptive

Based on the undisputed facts, it is clear that the FTC has shown that the Corporate Defendants' representations regarding the legality of their activities are deceptive. The Corporate Defendants represented to United States' consumers that selling and trafficking in foreign lottery tickets is legal, but 18 U.S.C. § 1301 specifically prohibits such activity.[8] Section 1301 prohibits

---

[8] As noted, the FTC further claims that the Corporate Defendants' activities violate other federal criminal statutes, namely, 18 U.S.C. §§ 1302, 1952, 1953, and 1084. The Court, however, need not reach those other arguments because the Corporate Defendants' representations were deceptive with respect to 18 U.S.C. § 1301.

13

mailing or otherwise sending not only actual foreign lottery tickets but any paper purporting to represent the tickets or interests in such tickets.[9]

It is a violation of the FTC Act for Defendants to make material misrepresentations to consumers that were likely to mislead consumers acting reasonably under the circumstances. *World Travel*, 861 F.2d at 1029. Here, it is undisputed that during telephone solicitations, the Corporate Defendants' telemarketers did not disclose that it is illegal to sell foreign lottery ticket packages to United States' consumers, nor did they disclose that it is illegal for United States' consumers to purchase foreign lottery tickets from the Corporate Defendants. It is further undisputed that when consumers questioned the legality of playing the Canadian lottery, the Corporate Defendants' telemarketers were trained to deny that it is illegal to sell and traffic in foreign lottery tickets, and to state that the law merely forbids sending tickets—and not other materials—through the mail. The FTC brought forth unrebutted evidence that several consumers relied on these explicit claims and would not have purchased the Corporate Defendants' products or services if the consumers had known that the proposed transactions might be illegal. Reliance on explicit claims is considered presumptively reasonable. *See World Travel*, 861 F.2d at 1029. Accordingly, Defendants' misrepresentations are material and were likely to mislead consumers

---

[9] Section 1301 provides "Whoever brings into the United States for the purpose of disposing of the same, . . . any paper, certificate, or instrument purporting to be or to represent a ticket, chance, share, or interest in or dependent upon the event of a lottery, gift enterprise, or similar scheme, offering prizes dependent in whole or in part upon lot or chance, or any advertisement of, or list of the prizes drawn or awarded by means of, any such lottery, gift enterprise, or similar scheme; or knowingly takes or receives such paper, certificate instrument, advertisement, or list so bought, deposited, or transported, shall be [punished]." 18 U.S.C. § 1301.

14

acting reasonably under the circumstances, and thus violate Section 5 of the FTC Act[10] and the Telemarketing Sales Rule.[11]

Defendants assert two arguments in their defense, neither of which has merit.

First, Defendants argue that 18 U.S.C. § 1301 does not prohibit their activities because they do not actually conduct a "lottery." Defendants cite *United States Postal Serv. v. Amada*, 200 F.3d 647 (9th Cir. 2000) for the proposition that their activities do not constitute a "lottery." Defendants' reliance on *Amada*, however, is misplaced. The defendants in *Amada* were prosecuted under a different statute, 39 U.S.C. § 3005. Section 3005 prohibits mailings where the person is "conducting" an illegal private lottery. The *Amada* defendants' liability therefore hinged on whether they actually conducted a lottery. The court determined that defendants did not violate the statute because they did not actually "conduct" a lottery themselves, but instead sold tickets for a government-run lottery. *Amada* has no bearing on this case because Defendants' liability does not turn on whether they conducted a lottery. Rather, Defendants' liability turns on whether they misrepresented to United States' consumers that it was legal to sell and traffic in foreign lottery tickets in light of Title 18 Section 1301's prohibition of such activity. Section 1301 does not limit liability to entities that actually conduct their own lotteries. Thus, whether Defendants actually conducted a lottery themselves is irrelevant.

Second, Defendants argue that "the Department of Justice indicated that 18 U.S.C. § 1302

---

[10] The Court need not determine whether Defendants' activities actually violate federal law. It is a violation of Section 5 of the FTC Act to unequivocally represent that activity prohibited by federal law is illegal.

[11] Section 310.3(a)(4) of the Telemarketing Sales Rule prohibits telemarketers and sellers from "[m]aking a false or misleading statement to induce any person to pay for goods or services." 16 C.F.R. § 310.3(a)(4).

15

was unconstitutional" (R. 38-1, Defs.' Opp. Mem. at 4), citing a letter written by Attorney General Janet Reno to the Speaker of the House of Representatives, dated September 25, 2000 ("DOJ Letter"). The DOJ Letter is irrelevant for two reasons. First, the Court need not address the constitutionality of 18 U.S.C. § 1302 because the FTC has shown that Defendants' misrepresentations are deceptive in light of 18 U.S.C. § 1301. In other words, the FTC need not prove that Defendants' misrepresentations are deceptive with respect to *all* federal statutes prohibiting activity relating to lotteries. Second, Defendants mischaracterize the scope of the DOJ Letter. The DOJ Letter expressly states that it "continues to regard § 1302 as enforceable in a number of significant applications," and specifically concludes that "the mailings covered in [this] decision do not include advertisements concerning state-operated lotteries." Moreover, the DOJ Letter is limited to "informational or advertisement mailings," as distinguished from the Corporate Defendants' mailing of tickets and confirmations. The DOJ Letter does not preclude summary judgment.

The FTC has shown that the Corporate Defendants made material misrepresentations to United States' consumers that were deceptive under Section 5 of the FTC Act and Telemarketing Sales Rule, in light of 18 U.S.C. § 1301.

### III. The FTC Has Shown That The Individual Defendants Are Liable

It is well-established that individuals may be held liable for corporate violations of the FTC Act. *FTC v. Amy Travel Servs., Inc.*, 875 F.2d 564, 573 (7th Cir. 1989). The FTC must first establish that the Corporate Defendants engaged in misrepresentations or omissions of a kind usually relied upon by persons acting reasonably, which results in consumer injury. *Id.* After establishing corporate liability, the FTC must then show that the individuals in question

participated directly in the practices or acts, or had the authority to control them. *Id.* This authority may be shown "by active involvement in business affairs and the making of corporate policy, including assuming the duties of a corporate officer." *Id.* Finally, the FTC must establish that the individuals had or should have had knowledge or awareness of the deceptive practices. *Id.* The knowledge requirement does not rise to the level of a subjective intent to defraud consumers, but is, instead, a knowledge or awareness of the misrepresentations on the part of the Corporate Defendants. *Id.*; *FTC v. Windermere Big Win Int'l*, No. 98 C 8066, 1999 WL 608715, at *5 (N.D. Ill. Aug. 5, 1999).

Based upon the facts deemed admitted as to the Corporate Defendants, namely the facts that the Corporate Defendants sold foreign lottery tickets to United States' consumers and represented to United States' consumers that their activities were legal, the FTC has conclusively shown that the Corporate Defendants have employed "unfair methods of competition . . . and unfair or deceptive acts or practices in or affecting commerce" in violation of the FTC Act. 15 U.S.C. § 45(a)(1). The Corporate Defendants' representations, omissions, and/or practices, such as those mentioned above, have misled "consumers, acting reasonably, to their detriment." *World Travel*, 861 F.2d at 1029.

Further, the FTC has shown that Yemec and Rapp were actively involved in the business affairs of the Corporate Defendants and had authority to control the activities of Corporate Defendants. Authority to control a company can be established by demonstrating that an individual assumed the duties of a corporate officer. *Amy Travel*, 875 F.2d at 573-74. Yemec and Rapp were clearly at the center of the Corporate Defendants' operations. Yemec incorporated WMB and served as its first and only director, president, and secretary. Similarly,

17

Yemec served as a corporate officer for 624654 Ontario Ltd., 637736 Ontario Ltd., and 537721 Ontario Inc. He was responsible for customer service and for approving the telemarketing scripts for the Corporate Defendants, and he managed the Corporate Defendants' telemarketing and promotions. Anita Rapp is also an owner, director, and officer of various Corporate Defendants, and although she did not have sole control over managing the Corporate Defendants' business affairs, she managed the Corporate Defendants' telemarketing operations and day-to-day financial and administrative affairs, and she arranged for offshore credit card processing for the Corporate Defendants' enterprises.

The FTC has also shown that Yemec and Rapp had or should have had knowledge or awareness of the Corporate Defendants' practices. The knowledge requirement does not have to rise to the level of subjective intent to defraud consumers. *Amy Travel*, 875 F.2d at 574. "[T]he degree of participation in business affairs is probative of knowledge." *Id.* The FTC has shown that Yemec and Rapp were actively involved in the business affairs of the Corporate Defendants. Yemec and Rapp do not dispute that they knew that their companies were selling foreign lottery tickets to United States consumers and that their telemarketers were not telling their consumers that the purchase and sale of foreign lottery tickets in the United States was illegal. They argue that they honestly believed that selling foreign lottery tickets in the United States was legal. But their subjective intent is irrelevant. *Amy Travel*, 875 F.2d at 575. Yemec and Rapp share liability for the Corporate Defendants' violations of the FTC Act and the Telemarketing Sales Rule.[12]

---

[12] Yemec and Rapp argue that they are no less culpable than other managers and supervisors of Corporate Defendants. Even if this were true, it does not make Yemec and Rapp any less culpable.

## CONCLUSION

Based on the undisputed facts, the FTC has shown that the Corporate Defendants sold foreign lottery tickets to United States' consumers, mailed foreign lottery materials to United States' consumers, and misrepresented to those consumers that their activities were legal. These activities constitute deceptive practices in violation of Section 5 of the FTC Act and the Telemarketing Sales Rule. The Individual Defendants Yemec and Rapp share responsibility for the Corporate Defendants' deceptive practices. Accordingly, summary judgment is granted in favor of the FTC as to Counts II, III, V, and VI.

Dated: March 1, 2004                    ENTERED

_____
AMY J. ST. EVE
United States District Court Judge